# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAWN ZAVEC, *et al.*,

    Plaintiffs,

v.

ROBERT COLLINS, BRIAN GIST, AND CITY OF WILKES-BARRE,

    Defendants.

NO. 3:16-CV-00347

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is a partial motion to dismiss (Doc. 38) Plaintiffs Dawn Zavec, individually, o/b/o M.Z., a minor, and as administrator of the estate of Joseph Zavec's Third Amended Complaint (Doc. 37) filed by Defendants Robert Collins ("Officer Collins"), Brian Gist ("Officer Gist"), and the City of Wilkes-Barre (collectively "Defendants"). Defendants' motion will be granted in part and denied in part.

### **I. Background**

The relevant facts, as set forth in Plaintiffs' Third Amended Complaint (Doc. 37), are as follows.

On November 10, 2014, at approximately 9:30 p.m., Wilkes-Barre Police Officers Robert Collins and Brian Gist encountered Plaintiffs Dawn Zavec ("Mrs. Zavec"), Joseph Zavec ("Mr. Zavec"),[1] and their daughter, M.Z., at their home on Weston Lane in the City of Wilkes-Barre while responding to a parking complaint involving Mr. Zavec and a neighbor. (Doc. 37 at ¶ 11.)

Officers Collins and Gist approached the Zavecs' door and spoke to them about the parking issue. (*Id.* at ¶¶ 13, 14, 16, 17.) The Officers became aware of both Mr. and Mrs.

---

[1] On June 11, 2016, Mr. Zavec passed away. On July 29, 2016, Mrs. Zavec became the administrator of Mr. Zavec's estate. Although Mr. Zavec is now deceased, I will refer to his claims using his name, rather than referring each time to his estate or administrator.

Zavec's disabilities during the encounter. (*Id.* at ¶¶ 15, 18, 19, 20, 24-28.) Mrs. Zavec was injecting medicine into her stomach within plain view of Officer Collins as he spoke to Mr. Zavec at the front door of the home. (*Id.* at ¶ 14.) A disposal container for Mrs. Zavec's needles and injection equipment was located in plain view as well. (*Id.* at ¶ 15.) Further, Mrs. Zavec explained to the Officers that she was holding an ice pack on her stomach because she had just given herself an injection of multiple sclerosis medication. (*Id.* at ¶¶ 18-20.) Mr. Zavec's speech disability, a pronounced stutter, was also apparent. (*Id.* at ¶¶ 13, 14, 24-28.)

While speaking to Mr. Zavec about his neighbor's parking complaint, Officers Collins and Gist began inspecting Mr. Zavec's vehicle and informed him that his window tint and tires were illegal. (*Id.* at ¶ 21.) Mr. Zavec, who was a licensed vehicle safety inspector in Pennsylvania, told the Officers that, in his opinion, the tints and tires were legal. (*Id.* at ¶ 23.)

At some point during the conversation, Officer Collins began mocking Mr. Zavec's speech impediment. (*Id.* at ¶ 24-25.) At that time, Mr. Zavec was inside his home and was conversing with the Officers, who were on the sidewalk in front of the home, through the front screen door. (*Id.* at ¶ 26.) Mrs. Zavec, who was inside the home, witnessed Officer Collins mocking Mr. Zavec's speech. (*Id.* at ¶ 27.)

Officer Gist then joined Officer Collins in mocking Mr. Zavec, and began to video and audiotape Mr. Zavec with a cell phone. (*Id.* at ¶ 29.) Plaintiffs contend that there was no reason for the Officers to continue interacting with them because the parking dispute had already been resolved. (*Id.* at ¶ 41.)

Mr. Zavec eventually ceased talking to the Officers. While still inside the home, he began speaking to Mrs. Zavec, at one point telling her "he just did it again," which was apparently a reference to Officer Collins continuing to mock Mr. Zavec's speech. (*Id.* at ¶ 34.) Shortly thereafter, Mrs. Zavec came out of the home and onto the front porch and asked Officers Collins and Gist to "[p]lease just go because I did see you do that [mock Mr. Zavec's speech impediment]. Please. Look, I am very sick and I don't need it. Just please leave. You did what you had to do, now you're just trying to antagonize him. Please leave." (*Id.* at ¶ 40.)

Mr. Zavec remained inside the home and observed the interaction between Mrs. Zavec

and the Officers through the screen door. (*Id.* at ¶ 46.) Officer Collins then asked Mrs. Zavec if she thought Mr. Zavec was being "unruly" and whether she heard Mr. Zavec tell the Officers to "go fuck themselves." (*Id.* at ¶ 47, 49.) Mr. Zavec confirmed that he had, indeed, said that. (*Id.* at ¶ 50.) Mr. Zavec further expressed anger that Officer Gist was recording the incident on his cell phone. (*Id.* at ¶ 51.) During the entire encounter, Officer Collins continued to mock and ridicule Mr. Zavec's speech impediment. (*Id.* at ¶ 53.)

Mrs. Zavec remained on the porch near the screen door and Mr. Zavec was now standing just outside the door next to Mrs. Zavec. (*Id.* at ¶ 54.) Frustrated and embarrassed by Officer Collins' mockery, Mr. Zavec threatened Officer Collins that, if the Officer continued to mock him, Mr. Zavec would "knock [his] black fucking head off." (*Id.* at ¶ 56, 58.)

After Mr. Zavec levied the threat, Officer Collins began screaming, "Now you're threatening! Now you're threatening!" and immediately charged at Mrs. Zavec, tackling her onto the living room floor. (*Id.* at ¶ 59-60.)

Officer Gist stopped recording the incident with his cell phone and entered Plaintiffs' home to join Officer Collins in his attack on Mrs. Zavec. (*Id.* at ¶ 61, 63.) One of the Officers pinned Mrs. Zavec to the ground and "trampled" on top of her while she cried that they were hurting her, screamed for help, and begged them to stop. (*Id.* at ¶ 62, 64.) One of the Officers also stepped on Mrs. Zavec's stomach, which is where she had earlier given herself an injection, and Officer Collins put his knees in Mrs. Zavec's eyes. (*Id.* at ¶ 65-66.) While Officers Collins and Gist were "trampling" on Mrs. Zavec, Mr. Zavec was telling the Officers that Mrs. Zavec had multiple sclerosis and that they were going to "kill" her. (*Id.* at ¶ 67.) Mrs. Zavec was able to get up off the ground, but her left leg was completely numb from the Officers' assault and, at some point, she lost control of her bladder. (*Id.* at ¶ 68, 71-72.)

It was at this point that Officers Collins and Gist turned their attention to Mr. Zavec and pinned him to the floor as well. (*Id.* at ¶ 68, 73.) Mrs. Zavec yelled at the Officers to get Mr. Zavec off his stomach because he also has medical conditions when, suddenly, Officer Collins removed his taser from its holster and pointed it at Mrs. Zavec's face with his finger

3

on the trigger, saying "I'm not telling you again," as he pulled her head back by her hair. (*Id.* at ¶ 74, 76.) M.Z., the Zavecs' daughter, attempted to assist Mrs. Zavec, but Officer Gist grabbed M.Z. by her shirt and threw her against a wall, breaking a hot wax warmer which dripped hot wax on M.Z.'s back. (*Id.* at ¶ 77.) In the midst of all the commotion, the Zavecs' puppy broke free from its crate. Officer Collins drew his firearm and threatened to shoot the puppy. (*Id.* at ¶ 78-79.) As a result of the Officers' actions, Plaintiffs' personal property was damaged. (*Id.* at ¶ 80.)

Eventually, a neighbor called an ambulance for Mrs. Zavec. (*Id*. at ¶ 84.) Before it arrived, Officers Collins and Gist left with Mr. Zavec in custody. (*Id.* at ¶ 87.) Following the incident, neither Mrs. Zavec nor M.Z. were charged with any crimes relating to this incident. (*Id.* at ¶ 89.) Mr. Zavec, on the other hand, was charged with misdemeanor terroristic threats, misdemeanor resisting arrest, summary disorderly conduct, and summary defiant trespass. (*Id.* at ¶ 90.) Mr. Zavec subsequently pleaded guilty to one count of summary disorderly conduct. (*Id.* at ¶ 92.) The remaining charges were dismissed. (*Id.* at ¶ 92.)

In light of the above, Plaintiffs instituted the instant lawsuit (Docs. 1, 15, 22, 37), asserting the following causes of action: (1) unreasonable seizure in violation of 42 U.S.C. § 1983, *id.* at ¶¶ 96-99; (2) use of excessive force in violation of 42 U.S.C. § 1983, *id.* at ¶¶ 100-103; (3) failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act § 504, 29 U.S.C. § 794, *id.* at ¶¶ 104-128; (4) assault, *id.* at ¶¶ 129-132; (5) battery, *id.* at ¶¶ 133-136; (6) trespass, *id.* at ¶¶ 137-139; and (7) conversion, *id.* at ¶¶ 140-142.

Defendants have filed a partial motion to dismiss Plaintiffs' Third Amended Complaint. (Doc. 38.) The motion has been fully briefed and is now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See*

4

*Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain [] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the [] claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there

5

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The court should also make "all reasonable inferences in the Plaintiff's favor." *See Maley v. Lodge*, Civ. No. 15-379, 2016 WL 1271388, at *4 (M.D.Pa. March 31, 2016).

In deciding a motion to dismiss, a court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

**A.   Count III – Claim Pursuant to the Americans with Disabilities Act and Rehabilitation Act Against Defendant City of Wilkes-Barre**

In Count III, Plaintiffs allege a claim against Defendant City of Wilkes-Barre pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., ("ADA") and the Rehabilitation Act § 504, 29 U.S.C. § 794 ("RA").[2] To make out a prima facie case under the ADA, a plaintiff must establish that: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007). Under the ADA, a "disability" is defined as: (A) a physical or mental

---

[2] The substantive standards for determining liability under the ADA and RA are the same, and are analyzed together. *McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92, 94–95 (3d Cir. 1995). I will refer to both Acts under the label "ADA" or "Title II."

impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). At the motion to dismiss stage, however, a court must determine whether a plaintiff has pleaded he is an individual with a disability, not whether he has established a prima facie case of disability discrimination. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). A plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* (internal quotation omitted).

Congress passed the ADA to eliminate discrimination against individuals with disabilities and to provide enforceable standards to address such discrimination. *See* 42 U.S.C. § 12101. Before the ADA was amended by Congress in 2008, the U.S. Supreme Court interpreted the definition of a disability under the Act strictly. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002); *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999). With the ADA Amendments Act of 2008 ("ADAAA"), Congress explicitly sought to reject these narrow interpretations. Pub. L. 110-325, 122 Stat. 3553, § 2(b)(5). Though Congress did not alter the definition of disability, it instructed that "[t]he definition of 'disability' in this Act shall be construed in favor of broad coverage [] to the maximum extent permitted by the terms" of the ADA. 42 U.S.C. § 12102(4)(A). Under the ADA as amended, "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110-325 § 2(b)(5). "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29. C.F.R. § 1630.2(j)(iii). Still, "[t]o state a claim under the ADA, a plaintiff's complaint must plead facts plausibly

suggesting that his alleged disability can meet all of the elements contained in the ADA's definition of disability." *Levesque v. Clinton Cnty.*, Civ. No. 10-0787, 2012 WL 6948779, at *5 (N.D.N.Y. December 28, 2012). Defendants move to dismiss both Mr. and Mrs. Zavec's ADA claims.[3]

*1. Mr. Zavec*

Regarding Mr. Zavec, Defendants argue that Plaintiffs state insufficient factual allegations tending to establish that Mr. Zavec is disabled under the ADA because they fail to allege what major life activities are impacted by his ailment. Plaintiffs allege that Mr. Zavec "has a pronounced speech impediment which causes him to stutter when he speaks." (Doc. 37 at ¶ 24.) Speaking is a major life activity for purposes of the ADA. 29 C.F.R. § 1630.2(I). Plaintiffs have not explicitly alleged that Mr. Zavec's stuttering "substantially limits" his speaking, and Defendants correctly observe that Mr. Zavec was able to effectively communicate a threat to Officer Collins which resulted in his pleading guilty to one count of summary disorderly conduct. (Doc. 37 at ¶ 92.) However, under the broad provisions of the ADAAA, allegations in a complaint showing a plaintiff is capable of communicating, though "noteworthy," need not prevent a Plaintiff from progressing past the motion to dismiss stage. *See Powell v. Wetzel*, Civ. No. 12-2455, 2014 WL 2472048, at *11 (M.D.Pa. February 25, 2014); *see also Medvic v. Compass Sign Co., LLC*, Civ. No. 10-5222, 2011 WL 3513499, at *7 (E.D.Pa. Aug. 10, 2011) (quoting *Bragdon v. Abbot*, 524 U.S. 624, 640 (1998) for the proposition that "when significant limitations result from the impairment, the definition [of disability] is met even if the difficulties are not insurmountable."). Further, the facts alleged by Plaintiffs relating to Mr. Zavec's communications with Officers Collins and Gist could equally be interpreted as evidence of Mr. Zavec's difficulty in communicating: his simple attempts to dispute the Officers' claim that the tint and tires on his vehicle were illegal resulted in the Officers mocking and ridiculing him, and in Officer Gist recording the

---

[3] I note at the outset that the majority of cases cited by Defendants were prior to the 2008 Amendments to the ADA and/or were at the summary judgment stage.

interaction on his cell phone. It seems unlikely that a person lacking Mr. Zavec's speech impediment would have encountered such difficulty in communicating effectively with the Officers. Resolution of this issue would require a more fact-specific finding than is appropriate at this stage of this proceedings. Therefore, giving Plaintiffs the full benefit of the ADAAA's broad provisions, and drawing all reasonable inferences from the facts as alleged in the Complaint, I find that Plaintiffs have sufficiently alleged that Mr. Zavec is disabled within the meaning of the ADA.

Defendants further contend that Plaintiffs have failed to adequately allege the fourth element of disability under the ADA: that Mr. Zavec was subjected to the Officers' alleged conduct *because of* his disability. Plaintiffs allege that the Officers initiated their arrest of Mr. Zavec in response to his threat to Officer Collins that he would "knock his black fucking head off" (Doc. 37 at ¶¶ 58-60, 68), not because of his alleged disability. This leaves only the Officers' alleged behavior prior to Mr. Zavec's threat, namely, their mocking and ridiculing Mr. Zavec's speech impediment, as a possible basis for alleging a violation of the ADA. Although clearly objectionable, mocking or ridiculing an individual's disability does not amount to a violation of the ADA. *See Edwards v. Horn*, Civ. No. 10-6194, 2012 WL 760172, at *15 (S.D.N.Y. March 8, 2012)(retaliatory verbal abuse that amounted only to "name-calling" based on disability insufficient to allege an adverse action in the absence of a specific threat); *Abbott v. Town of Salem, New Hampshire*, Civ. No. 05-127, 2008 WL 163043, at *5 n. 6 (D.N.H. January 16, 2008) (disability-based mocking plaintiff allegedly suffered while in custody at the police station, "no matter how distasteful, [was] not the sort of discrimination the ADA was enacted to prevent"); *Battice v. Phillip*, Civ. No. 04-669, 2006 WL 2190565, at *7 n. 6 (E.D.N.Y. August 2, 2006)(allegation that state officials made fun of plaintiff's disability did not suffice to allege denial of the benefit of any public services, programs, or activities by reason of his disability); *Hassan v. Slater*, 41 F.Supp.2d 343, 353 (E.D.N.Y. March 1, 1999)(denying, on grounds of futility, plaintiff's motion to amend complaint to add an ADA claim based upon "humiliating, degrading and insulting" remark directed toward him by railway ticket agent, over public loudspeaker). Here, the actions Plaintiffs have alleged

9

were taken by Officers Collins and Gist because of Mr. Zavec's disability, while certainly distasteful, amount only to mockery and verbal abuse, and therefore cannot sustain Plaintiffs' ADA claim with respect to Mr. Zavec.

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).[4] "'[A] case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations.'" *Creasy v. Novelty, Inc.*, Civ. No. 404-2296, 2005 WL 1652441, at *3 (M.D.Pa. 2005)(quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)). However, "undue delay, bad faith, dilatory motive, prejudice, [or] futility could all justify a denial of leave to amend." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" under Rule12(b)(6). *Id.* In assessing "futility," the District Court applies the same standard provided in Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency. *Id.*

Here, in order for Plaintiffs to state a claim that the Officers violated the ADA with respect to Mr. Zavec, they would need to allege that the Officers behaved unlawfully toward Mr. Zavec because of his disability. Plaintiffs have already alleged that Officers Collins and Gist initiated their arrest of Mr. Zavec in response to Mr. Zavec's threat, and that Mr. Zavec subsequently pleaded guilty for the same. (Doc. 37 at ¶¶ 58-60, 92.) There are no factual allegations from which it is possible to infer that Plaintiffs would be able to allege in an

---

[4] "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought. Circuit case law, however, holds that leave to amend must be given in this situation as well," meaning that district judges should expressly state, where appropriate, whether a plaintiff is granted leave to amend, even where the plaintiff does not request it. *Id.* at 116 (discussing *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976)). Applying this case law, a court should either grant leave to amend or conclude that amendment would be futile. *Id.*

additional amended complaint that the Officers' arrest of Mr. Zavec was because of his alleged disability (they have already stated it was not), or that the Officers violated the ADA with respect to Mr. Zavec through their behavior prior to initiating his arrest (Plaintiffs' detailed factual allegations describing this behavior include nothing beyond the Officers mocking Plaintiff). Therefore, Plaintiffs will not be granted leave to amend.

*2. Mrs. Zavec*

Regarding Mrs. Zavec, Defendants argue that she has also failed to allege whether and how her multiple sclerosis substantially affects a major life activity. Plaintiffs allege that Mrs. Zavec's multiple sclerosis "prevented her from having the full physical capabilities of a non-disabled person," (Doc. 37 at ¶ 117), but do not specify any particular life activity in which Mrs. Zavec was substantially impaired. However, multiple sclerosis is explicitly listed under the EEOC regulations implementing the ADAAA as one of a handful of impairments "which by their inherent nature should be easily found to impose a substantial limitation on a major life activity, and for which the individualized assessment should be particularly simple and straightforward." 29 C.F.R. § 1630.2(j)(4)(iv). "[A]pplying the principles set forth in [these regulations], it should be easily concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: [] multiple sclerosis substantially limits neurological function." *Id.* at § 1630.2(j)(3)(iii); *see also Dactelides v. Bd. of Sch. Tr. of South Bend Cmty. Sch. Corp.*, 562 Fed.App'x. 534, 535 n. 1 (Mem.)(7th Cir. 2014)(noting that where appellant had alleged a diagnosis of multiple sclerosis, and appellees did not dispute the diagnosis, appellant "likely was disabled for purposes of the ADA" in light of the above regulations). Since Mrs. Zavec has alleged that she suffers from multiple sclerosis and that she does not have the full physical capabilities of a non-disabled person, and Defendants do not contest her diagnosis, I conclude that Plaintiffs have sufficiently alleged that Mrs. Zavec is disabled under the ADA.

Defendants also contend that Plaintiffs have failed to plead the element of causation required to state an ADA claim with respect to Mrs. Zavec. I addressed the relevant legal arguments on this topic in ruling on Defendants' Motion to Dismiss Plaintiff's Second

Amended Complaint,[5] and therefore find that Plaintiffs have sufficiently alleged the causation element as it relates to their claim for failure to accommodate under the ADA.

**B.      Count VII – Claim for Conversion against Defendants Collins and Gist**

Defendants further argue that Plaintiffs' conversion claim should be dismissed because Defendants Collins and Gist are entitled to governmental immunity since they were acting in their official capacities as police officers at all relevant times.[6] "[T]he standard of review for a 12(b)(6) motion generally favors plaintiffs in denying qualified immunity." *Holloway v. Brechtse*, 279 F.Supp.2d 613, 617 n.7 (E.D.Pa. 2003)(citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Accordingly, the Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).

Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. Although there are exceptions to this general grant of governmental immunity, the exceptions are limited to injury "caused by the negligent acts of the local agency or an employee thereof." 42 Pa.C.S.A. § 8542. Generally, "an employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42

---

[5] *See Zavec v. Collins*, Civ. No. 16-00347, 2017 WL 3189284, at *14-16 (M.D.Pa. July 27, 2017)(discussing failure to accommodate theory in claims that police actions violate the ADA and concluding that Plaintiffs' ability to recover would be a fact-specific inquiry inappropriate for the motion to dismiss stage).

[6] Conversion is defined under Pennsylvania law as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000). Defendants do not argue that Plaintiffs fail to adequately plead the elements of a conversion claim.

Pa.C.S.A. § 8545. Further, 42 Pa.C.S.A. § 8546(2) provides that an agency employee may assert the defense of official immunity where the employee's conduct "was authorized or required by law, or [] he in good faith reasonably believed the conduct was authorized or required by law." However, 42 Pa.C.S.A. § 8550 states that where it is "judicially determined that the act of the employee caused the injury and that such act constituted [] willful misconduct, the provisions of sections 8545 (relating to official liability generally), [and] 8546 (relating to defense of official immunity) shall not apply." Claims against officers acting in their "official capacity" are properly treated as claims against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Stana v. Sch. Dist. of Pittsburgh*, 775 F.2d 122, 130 (3d Cir. 1985).

Plaintiffs argue that they have alleged intentional conduct, and the relevant provision for assessing the Officers' entitlement to immunity is therefore § 8550, which precludes immunity from claims arising from intentional acts. Defendants argue that Officers Collins and Gist are entitled to immunity because they were acting in their official capacities at all relevant times, and that their actions should therefore fall under the protection of §§ 8542 and 8546(2) rather than the exception of § 8550. Defendants point out that Plaintiffs do not specifically allege whether Officers Collins and Gist were acting within the course and scope of their official duties, and argue that Plaintiffs' conversion claim should be interpreted as naming the Officers only in their official capacities because Plaintiffs' alleged facts show the Officers were employed by the Wilkes-Barre City Police Department, arrived in police uniform and in a marked squad car in response to a complaint made by the Zavecs' neighbors, and lawfully arrested Mr. Zavec.

First, Plaintiffs indicate the relevant Defendants for each claim in the headings of each count of their Third Amended Complaint. The heading of Count VII indicates Plaintiffs' conversion claim is brought only against Officers Collins and Gist, and not the Defendant City of Wilkes-Barre. Where Plaintiffs have clearly made this distinction, it makes no sense to construe their claim as being brought against the Officers only in their official capacities, thus interpreting it as a claim against the only Defendant they did not include.

13

Further, as many of the cases Defendants cite indicate, arriving in uniform and for a lawful purpose does not entitle police officers to immunity for whatever intentional torts they may commit afterward. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2009) (plaintiffs' ability to bring civil action for conversion was an adequate remedy barring their procedural due process claim because defendant officer who arrived in patrol car would not be immune from liability for conversion where he intentionally shot plaintiffs' pet); *Dix v. City of Phila.*, Civ. No. 15-532, 2015 WL 4624248, at *4 (E.D.Pa. August 3, 2015)(under § 8550, defendant officers were not immune from liability for a conversion claim though they arrived in police cars in response to a 911 call); *Safa v. City of Phila*, Civ. No. 13-5007, 2014 WL 2011487, at *8 (E.D.Pa. May 16, 2014)(detective employee of police department was not immune from a conversion claim arising from seizure of merchandise); *Lancie v. Giles*, 572 A.2d 827, 830 (Pa. Cmwlth. 1990) (sections 8545 and 8546 precluded liability for negligent acts of police officers executing a search warrant, but not for claim of intentional infliction of emotional distress arising from same facts). Defendants cite *Marquardt v. Miller*, No. 1316 C.D. 2012, 2013 WL 3960620, at *2 (Pa. Cmwlth. 2013) for the proposition that an officer who responds to a call in uniform and in a marked police vehicle is acting within the scope of his official duties. *Marquardt* is distinct from the instant case because the Court in that case found that the plaintiff did not allege any facts demonstrating that the defendant police officer acted without lawful justification, and the allegations in the complaint clearly demonstrated that the officer had conferred with his supervisors and the District Attorney before issuing the order which the plaintiff claimed was conversion. *Id.* at *4. Here, as discussed below, Plaintiffs have alleged facts which, if true, constitute actions by the Officers without lawful justification.

Finally, Defendants argue that they are entitled to immunity because their conduct was "authorized or required by law" as provided in § 8546(2). In support of this argument, Defendants claim that "the actions alleged in the complaint rise to, at most, a negligent act while the officers were effectuating the lawful arrest of Mr. Zavec." (Doc. 45, p. 12.) I disagree. Plaintiffs state that, at the time the alleged conversion occurred, Officer Collins was

14

pointing his taser in Mrs. Zavec's face while "pull[ing] her head down by her hair" in response to her yelling at the Officers to "get Mr. Zavec off his stomach because he also has medical conditions." (Doc. 37 at ¶¶ 74, 76.) When M.Z. "attempted to assist" Mrs. Zavec, Plaintiffs allege that Officer Gist "grabbed M.Z. by her shirt and threw her against the wall, breaking a hot wax warmer which dripped hot wax down M.Z.'s back." (*Id.* at ¶ 77.) Accepting Plaintiff's allegations as true, it is difficult to see how this could be considered "negligent" conduct that might reasonably occur in the course of arresting Mr. Zavec. *Accord. Holloway*, 279 F.Supp.2d at 614, 615-616 (police officer who (apparently lawfully) arrested plaintiff for disorderly conduct and then intentionally slammed her head into a glass panel was not entitled to immunity). Therefore, Defendants' Motion to Dismiss Plaintiffs' conversion claim will be denied.

## IV. Conclusion

For the above stated reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

An appropriate order follows.

February 23, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge